NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
30277
10-MAY-2013
08:46 AM**

NO. 30277

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


XANNA KIM-ALANIZ, a minor, by and through her
Guardian ad Litem, JOANNA KIM, XAVIER ALANIZ
and JOANNA KIM, Plaintiffs-Appellants,
v.
EXECUTIVE CENTER AOAO, CERTIFIED MANAGEMENT, DALE ANZAI,
DOUG MATTOS, ROY HO, ART HEATH, JASON PRINCENTHAL, AIRCARE
ENVIRONMENTAL SERVICES, INC., PAUL SHERIFF, JOSEPH HA,
WARREN WONG, GLENN WOO, JOHN HALL, JOE FADROWSKY, RON
BALDWIN, TOM ROESSER, ANTHONY RUSSO, DOE DIRECTORS 1-10,
DOE MANAGERS 1-10, COLOR DYNAMICS, INC., DOE COMPANIES 1-10,
AND DOE WORKERS 1-20, Defendants-Appellees
and
EXECUTIVE CENTER AOAO, Counterclaimant-Appellee,
v.
JOANNA KIM, Counterclaim Defendant-Appellant,
and DOE DEFENDANTS 1-50, Counterclaim Defendants
and
EXECUTIVE CENTER AOAO, CERTIFIED MANAGEMENT,
DALE ANZAI, PAUL SHERIFF and TOM ROESSER,
Cross-Claimants-Appellees,
v.
JASON PRINCENTHAL, AIRCARE ENVIRONMENTAL SERVICES, INC.,
and COLOR DYNAMICS, INC., Cross-Claim Defendants-Appellees
and
COLOR DYNAMICS, INC., Cross-Claimant-Appellee,
v.
EXECUTIVE CENTER AOAO, CERTIFIED MANAGEMENT, DALE ANZAI, DOUG
MATTOS, ROY HO, ART HEATH, JASON PRINCENTHAL, AIRCARE
ENVIRONMENTAL SERVICES, INC., PAUL SHERIFF, JOSEPH HA, WARREN
WONG, GLEN WOO, JOHN HALL, JOE FADROWSKY, RON BALDWIN, TOM
ROESSER, AND ANTHONY RUSSO, Cross-Claim Defendants-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0668)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Reifurth, JJ.)

Plaintiff/Counterclaim Defendant-Appellant Joanna Kim, her fiancé, Plaintiff-Appellant Xavier Alaniz, and their child, Plaintiff-Appellant Xanna Kim-Alaniz, a minor, by and through her Guardian Ad Litem, Joanna Kim (collectively, "Plaintiffs-Appellants"), appeal from sixteen orders[1] and the Final Judgment, filed on December 9, 2009 ("Final Judgment") in the

---

[1]     Specifically, Plaintiffs-Appellants appeal from (1) the September 7, 2007 order denying Plaintiffs-Appellants' motion to strike; (2) the October 4, 2007 order granting Defendants/Cross-Claim Defendants-Appellees Jason Princenthal's and Aircare Environmental Services, Inc.'s (collectively, "Aircare") motion to dismiss or, in the alternative, for summary judgment; (3) the October 4, 2007 order granting Aircare's motion to dismiss Defendant/ Cross-Claim Defendant/Cross-Claimant-Appellee Color Dynamics, Inc.'s ("Color Dynamics") cross-claim against Aircare or, in the alternative, for summary judgment; (4) the September 10, 2008 order granting Defendant/Cross-Claimant/ Counterclaimant/Cross-Claim Defendant-Appellee Executive Centre AOAO's ("AOAO") motion for partial summary judgment as to Plaintiffs-Appellants' claims for damages relating to mold; (5) the October 3, 2008 order granting Color Dynamics' joinder to AOAO's motion for partial summary judgment as to Plaintiffs-Appellants' claims for damages relating to mold; (6) the February 5, 2009 order granting in part and denying in part AOAO's motion for partial summary judgment on the breach of contract count of the counterclaim (Count II) and for entry of decree terminating conveyance documents, or partial summary judgment on the foreclosure count of the counterclaim (Count I) and for interlocutory decree of foreclosure; (7) the February 20, 2009 order denying Plaintiffs-Appellants' oral motion for interlocutory appeal of AOAO, Defendants/Cross-Claimants/Cross-Claim Defendants Certified Management, Inc. ("Certified Management"), and Dale Anzai, Roy Ho and Doug Mattos' (collectively, "AOAO Defendants") motion for partial summary judgment as to Plaintiffs-Appellants' claims for damages related to personal injury; (8) the February 20, 2009 order granting Color Dynamics' joinder to AOAO Defendants' motion for partial summary judgment as to Plaintiffs-Appellants' claims for damages related to personal injury and claim for emotional distress; (9) the February 26, 2009 order granting AOAO Defendants' motion in limine no. 7 to preclude any evidence or argument regarding Plaintiffs-Appellants' claims for loss of income; (10) the February 26, 2009 order granting AOAO Defendants' motion in limine no. 6 to preclude any evidence or argument regarding lawsuit filed by Jon Dixon ("Dixon") or circumstances giving rise to the lawsuit; (11) the February 26, 2009 order granting AOAO Defendants' motion in limine no. 4 to preclude any evidence or argument regarding Plaintiffs-Appellants' claims for personal injury or emotional distress; (12) the March 3, 2009 order granting AOAO Defendants' motion in limine no. 1 to preclude any argument that they are liable for water damage or mold not caused by leaks from the common element planter box; (13) the March 4, 2009 order granting AOAO Defendants' motion for partial summary judgment as to Plaintiffs-Appellants' claims related to personal injury and claim for emotional distress; (14) the March 31, 2009 order granting in part and denying in part AOAO Defendants' March 3 2009 oral motion for judgment as a matter of law; (15) the March 31, 2009 order denying Plaintiffs-Appellants' March 4, 2009 oral motion to amend the complaint; and (16) the August 7, 2009 order granting AOAO's motion for recovery of lease rents, maintenance fees, late charges and costs incurred by the AOAO in enforcing provisions of the declaration and bylaws, collecting delinquent assessments and responding to unsubstantiated claims.

2

Circuit Court of the First Circuit ("Circuit Court"),[2] in favor of Aircare, AOAO, and Color Dynamics.

On appeal, Plaintiffs-Appellants argue that the Circuit Court erred by (1) concluding that Aircare owed no duty of care to Plaintiffs-Appellants; (2) concluding that chiller supply lines leading into Unit #202's air conditioning unit were not common elements and granting Color Dynamics' motion for joinder to the AOAO's motion for partial summary judgment as to Plaintiffs-Appellants' claims for damages relating to mold ("MPSJ re Mold"); (3) concluding that Plaintiffs-Appellants could not obtain relief absent expert medical testimony to substantiate their personal-injury and emotional-distress claims; (4) finding that Plaintiffs-Appellants and the AOAO lacked privity of contract; (5) denying Plaintiffs-Appellants' oral motion to reintroduce a breach-of-contract claim as brought under the incorrect rule; (6) issuing an ambiguous special-verdict form; (7) unjustly requiring Plaintiffs-Appellants to pay maintenance fees for an apartment rendered uninhabitable by the AOAO's negligence; (8) failing to clarify or strike the AOAO's defense of privity of contract; (9) granting several motions in limine that were predicated on prior erroneous holdings; and (10) awarding attorneys' fees to the AOAO absent proof of the reasonableness of the fees incurred and despite the practice of "block billing."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Plaintiffs-Appellants' points of error as follows:

(1) Plaintiffs-Appellants did not share a special relationship with Aircare such that Aircare had an affirmative duty to protect Plaintiffs-Appellants from harm. *See Doe Parents No. 1 v. State Dep't of Educ.*, 100 Hawaiʻi 34, 71, 58 P.3d 545, 582 (2002). A duty to warn or protect another from harm does not arise from mere awareness of a harmful or potentially harmful situation. *See Lee v. Corregedore*, 83 Hawaiʻi 154, 167, 925 P.2d

---

[2] The Honorable Gary W.B. Chang presided over all proceedings.

324, 337 (1996). Instead, a specific duty to safeguard another only arises when parties share a special relationship. *Kahoʻohanohano v. Dep't of Human Servs.*, 117 Hawaiʻi 262, 287, 178 P.3d 538, 563 (2008).

Plaintiffs-Appellants assert no such special relationship beyond Plaintiff-Appellant Kim's status as a member of the AOAO. They offer no argument, and we determine no basis for concluding, that this constitutes a special relationship in the context of a duty to safeguard.[3/]

The AOAO engaged Aircare to investigate Unit #202 for air-quality issues and the presence of mold. Upon inspection, while it was apparent that mold was present in Unit #202, Aircare had no duty to take any action to determine the extent or harmfulness of the mold infestation. *Lee*, 83 Hawaiʻi at 167, 925 P.2d at 337; *cf. Bennett v. MIS Corp.*, 607 F.3d 1076, 1099–1100 (6th Cir. 2010).[4/]

Plaintiffs-Appellants, attempting to predicate a duty on the foreseeability of harm, cite *Pulawa v. GTE Hawaiian Tel*, 112 Hawaiʻi 3, 143 P.3d 1205 (2006), for the proposition that the existence of a legal duty is determined not just by whether a special relationship exists, but by evaluating a host of additional factors. Indeed, *Pulawa* specifies the general test for determining when a duty arises, *see Pulawa*, 112 Hawaiʻi at 11–12, 143 P.3d at 1213–14, but Plaintiffs-Appellants make no distinction between its applicability for acts of omission and commission. While *Pulawa* states vaguely and parenthetically that "circumstances may warrant" a party taking affirmative steps to protect another, such vague and limited language does not abrogate the well-established (and recently-applied) tenet that

---

[3/] Plaintiffs-Appellants also argue that Kim's membership makes her a third-party beneficiary to any contract between the AOAO and another party, such as Aircare, and confers standing to sue. True as this may be for an action in contract, Plaintiffs-Appellants offer no discernible argument that such an action also sounds in tort. Therefore, they have waived this particular argument. Haw. R. App. P. 28(b)(7) (2009).

[4/] Had Aircare's services placed Plaintiffs-Appellants in danger by *creating or exacerbating* a risk of harm, then it might have had a duty to protect Plaintiffs-Appellants from that potential harm, but Aircare's inspection services neither caused nor aggravated whatever risk of harm persisted in Unit #202. *See Touchette v. Ganal*, 82 Hawaiʻi 293, 303, 922 P.2d 347, 357 (1996).

the duty to act affirmatively arises only out of a special relationship. *See Kahoʻohanohano*, 117 Hawaiʻi at 287, 178 P.3d at 563; Restatement (Second) of Torts § 314 (1965).

Aircare's obligations were to the AOAO, not to Plaintiffs-Appellants. We therefore conclude that the Circuit Court properly dismissed Plaintiffs-Appellants' claims against Aircare.[5]

(2) There was no genuine issue of material fact regarding liability for those portions of the chiller supply lines that were located within Unit #202. The AOAO's MPSJ re Mold sought to limit its potential liability to only those damages attributable to common elements. Therein, the AOAO argued that the air-conditioning unit, including the chiller supply lines, was not a common element. It presented the AOAO's condominium declaration ("Declaration"), which states, in relevant part:

> 2. Common Elements. One freehold estate is hereby designated in all remaining portions of the Project, herein called the "common elements," including specifically but not limited to:
>
> . . . .
>
> (e) All *pipes*, cables, conduits, ducts, vents, chutes, electrical equipment, wiring and other central; and appurtenant transmission facilities and installations over, under and across the Project *which serve more than one apartment* for services such as power, light, gas, water, sewer, ventilation, refuse, radio, telephone and television signal distribution, if any[.]

The only evidence presented by Plaintiffs-Appellants in support of the proposition that the chiller supply lines were common elements was an excerpt from the Executive Centre Owner's Guide ("Owner's Guide"), which states, in relevant part:

> One of the many features at Executive Centre is central air conditioning. The cost for central air conditioning maintenance is included in the regular monthly maintenance fees. *However, filters and repairs to each fan coil unit in your apartment are at the owners* [sic] *expense.* It is recommended that the air conditioning filters be changed on a semi-annual basis.

---

[5] Plaintiffs-Appellants also contend that the Circuit Court erred by dismissing Color Dynamics' cross-claim against Aircare. However, Plaintiffs-Appellants do not have standing to appeal the ruling as to the dismissal of that cross-claim. *See Abaya v. Mantell*, 112 Hawaiʻi 176, 181, 145 P.3d 719, 724 (2006).

Plaintiffs-Appellants argued that, by inference, the Owner's Guide communicates that the AOAO will perform maintenance on other components of the air-conditioning unit, including the chiller supply lines. Regardless of the reasonableness of that inference, however, that excerpt says nothing about, and is therefore not evidence of, whether chiller supply lines are common elements.

Plaintiffs-Appellants further cite to a policy statement issued by the AOAO to owners apprising them that the AOAO would, for a mandatory fee, assume inspection and preventative maintenance servicing duties of air-conditioning units. The statement enumerates several components as targets of these duties, but does not mention the chiller supply lines. It also states that "by offering this service [the AOAO is] not taking on the responsibility to maintain, repair or replace your unit if it fails," and that "[t]he air conditioning system is an integral part of your apartment and is solely the owner's responsibility for maintenance and replacement." Similarly, this statement is silent on the question of whether the chiller supply lines are common elements.

Evaluating the evidence and drawing inferences therefrom in the light most favorable to Plaintiffs-Appellants, they have failed to produce evidence demonstrating a genuine issue of material fact. *See Kamaka v. Goodsill Anderson Quinn & Stifel*, 117 Hawai‘i 92, 104, 176 P.3d 91, 103 (2008). At most, a juror could reason that the AOAO had assumed some level of responsibility, apparently for a fee, for air-conditioning components apart from the fan coil and filters. But in light of the fee, the explicit language that the air-conditioning system remains the owner's responsibility, and above all, the Declaration limiting common-element piping to that servicing more than one unit, it would not be reasonable to then infer that the AOAO assumed such duties because they had ownership of them as common elements. The Circuit Court correctly concluded that there was no genuine issue of fact regarding the status of the

chiller supply lines as non-common elements.[6/]

Plaintiffs-Appellants further argue that whether the non-common elements caused any of the mold and consequent damages presented an issue of comparative negligence appropriate for the jury to hear. Regardless of the merits of that assertion, it has no bearing on the Circuit Court's determination that the AOAO cannot be held liable for damages arising from non-common elements. Thus, this argument is without merit.

(3) The Circuit Court acted within its discretion in declining to qualify Dr. Ewing as an expert witness regarding non-allergic health complications from mold exposure. Dr. Ewing's qualifications as an allergen specialist and his limited knowledge of mold toxicity were insufficient "to make it appear that his opinion or inference-drawing would probably aid the trier of fact" in considering whether mold toxicity was the causation mechanism for Plaintiffs-Appellants' symptoms. *Larsen v. State Sav. & Loan Ass'n*, 64 Haw. 302, 304, 640 P.2d 286, 288 (1982). The Circuit Court, therefore, correctly determined that it would be improper for an allergen specialist to introduce evidence regarding mold toxicity and its distinct injury mechanism where his only familiarity with the subject was having read some medically suspect studies. *See Craft v. Peebles*, 78 Hawai'i 287, 301-02, 893 P.2d 138, 152-53 (1995).

The Circuit Court was also correct in determining that expert testimony regarding the mold toxicity causation mechanism was necessary to establish the causation element of Plaintiffs-Appellants' claim. In determining whether expert testimony is required, other jurisdictions have considered whether the subject matter at issue was beyond the comprehension of the ordinary juror. *See, e.g., Qualls v. State Farm Lloyds*, 226 F.R.D. 551, 554-60 (N.D. Tex. 2005); 31A Am. Jur. 2d *Expert and Opinion Evidence* § 200 (2002). Here, because Plaintiffs-Appellants' symptoms were medically complex, and the mechanism by which mold

---

[6/] For this reason, Plaintiffs-Appellants' argument that the Circuit Court's grant of Color Dynamic's motion for joinder to the MPSJ re Mold was in error is without merit, as that argument is premised solely on the Circuit Court's alleged error regarding the MPSJ re Mold.

toxicity affects the human body is beyond the familiarity of the ordinary juror, the jury would have been incompetent to determine the issue of causation. Consequently, expert testimony was essential to enabling the jury to determine causation.

Therefore, the Circuit Court did not err in declining to qualify Dr. George Ewing as an expert witness regarding mold toxicity and in granting the AOAO's motion for want of such expert testimony. Summary judgment was properly granted in favor of the AOAO.[1]/

(4) The Circuit Court correctly determined that Plaintiffs-Appellants had provided no evidence of a contractual relationship between the AOAO and Plaintiffs-Appellants obligating the AOAO to maintain the planter box. Plaintiffs-Appellants rely instead on a letter from Certified Management stating: "It is [Certified Management's] business philosophy and responsibility to . . . [m]anage the maintenance of the common elements (unless excluded by terms of our contract with your association)." This letter, however, evinces, if anything, a contractual relationship between the AOAO and its apparent subcontractor, Certified Management—not between the AOAO and Plaintiffs-Appellants.

Even if the AOAO had engaged Certified Management to maintain the planter boxes, that is not evidence of a contractual duty owed by the AOAO to its constituent owners. Essentially, Plaintiffs-Appellants would have this court infer that the AOAO would only engage a subcontractor to perform a service if it owed a *contractual* duty to the association's owners. Such an inference is not a legitimate one. *See Toney v. Fauhiva*, 109 Hawai'i 96, 99, 123 P.3d 691, 694 (2005). Whether the AOAO's motivation for contracting with Certified Management was a distinct contractual obligation to its constituent owners, a

_____

[1]/      Plaintiffs-Appellants also challenge orders denying a motion for interlocutory appeal of the Circuit Court's ruling, granting Color Dynamics' request for joinder to the underlying motion, and granting a motion in limine, but as Plaintiffs-Appellants indicate, these challenges rest on the alleged impropriety of the grant of the instant motion. Because the grant of the underlying motion is not in error, and Plaintiffs-Appellants make no additional argument regarding these orders, these subsequent orders are also not in error.

fiduciary duty, a more general duty of care owed to others, or another reason altogether is entirely speculative.

The Circuit Court correctly found no evidence of a contractual obligation owed by the AOAO to Plaintiffs-Appellants. Thus, it did not err in granting the oral motion for a directed verdict on Plaintiffs-Appellants' breach-of-contract claim.

(5) The Circuit Court did not abuse its discretion in rejecting Plaintiffs-Appellants' attempt, under Hawaiʻi Rules of Civil Procedure ("HRCP") Rule 15(b), to reintroduce their breach-of-contract claim, upon which the Circuit Court had already granted the AOAO Defendants a directed verdict. Even without the Circuit Court's stated rationale—that it was futile to amend the Complaint to add a claim already pled therein—Plaintiffs-Appellants' argument is without merit.

Plaintiffs-Appellants argue that the Circuit Court should have recognized the motion as though it were brought under HRCP Rule 60(b), which would have permitted the court to grant relief from its prior directed verdict. They do not argue, however, any specific basis under HRCP Rule 60(b) upon which the Circuit Court could have granted relief, and we discern none. Whether under HRCP Rule 15(b) or HRCP Rule 60(b), the Circuit Court acted within its discretion in denying Plaintiffs-Appellants' oral motion.

(6) The jury instructions, including the Special Verdict form, did not provide confusing or conflicting definitions of negligence, nor was the jury tasked with determining conclusions of law.[8]

The Circuit Court issued the Special Verdict form that, in relevant part, sought answers to two questions. The first question required the jury to determine whether the AOAO was "negligent in maintaining the planter box outside Plaintiff's apartment 202?" The form then instructed that if the jury's answer was "No," that jurors should not continue to answer any further questions. The second question asked the jury to

---

[8] Plaintiffs-Appellants did not object to the jury instructions, and thus we review for plain error. *See Montalvo v. Lapez*, 77 Hawaiʻi 282, 290-91, 884 P.2d 345, 353-54 (1994).

determine if the AOAO's negligence was "a legal cause of Plaintiffs' damages?"

The Circuit Court also issued, in relevant part, the following jury instructions:

> Plaintiffs must prove . . . that defendant was negligent and that such negligence was a legal cause of plaintiffs' damages.
>
> . . . .
>
> Negligence is doing something which a reasonable person would not do or failing to do something which a reasonable person would do. It is the failure to use that care which a reasonable person would use to avoid damage to property.
>
> In deciding whether a person was negligent, you must consider what was done or not done under the circumstances as shown by the evidence in this case.
>
> In determining whether a person was negligent, it may help to ask whether a reasonable person in the same situation would have foreseen or anticipated that damage could result from that person's action or inaction. If such a result would be foreseeable by a reasonable person and if the conduct reasonably could be avoided, then not to avoid it would be negligence.
>
> You must determine whether any of the parties in this case were negligent and whether such negligence on the part of a party was a legal cause of plaintiffs' damages. If you find that more than one party was negligent and such negligence was a legal cause of the damages, you must determine the total amount of plaintiffs' damages, without regard to whether plaintiffs' own negligence was also a legal cause of the damages.
>
> . . . .
>
> An act or omission is a legal cause of damage if it was a substantial factor in bringing about the damage.

When read as a whole, we find nothing confusing, inconsistent, or otherwise erroneous with the jury instructions and the Special Verdict form. *See State v. Gonsalves*, 108 Hawai‘i 289, 292, 119 P.3d 597, 600 (2005). The jury was merely tasked with determining whether the AOAO was negligent, in terms of failing to adhere to a standard of care, and if so, whether such negligence was the cause of harm suffered by Plaintiffs-Appellants. Dictionary definitions of negligence notwithstanding, we decline to interpret the jury instructions as

10

stating anything other than that which they state.[9]

(7) The Circuit Court correctly applied Hawaii Revised Statutes ("HRS") § 514A-90 to enforce payments owed by Plaintiffs-Appellants to the AOAO, despite Plaintiffs-Appellants' belief that they had been constructively evicted due to the mold infestation.

Plaintiffs-Appellants' constructive-eviction argument is without merit. Plaintiffs-Appellants do not suggest that HRS § 514A-90 is ambiguous, but rather that its application here is unjust and not compatible with the legislature's intent. HRS § 514A-90 is written as a "pay now, argue later" statute, *see* § 514A-90(d), applicable in all circumstances, *see* § 514A-90(c). Moreover, legislative history indicates that the specific motivation for adding subsections (c) and (d) to HRS § 514A-90 was to encourage dispute resolution and discourage owners from withholding payments. H. Stand. Comm. Rep. No. 807, in 1991 House Journal, at 1119-20. Even if Plaintiffs-Appellants evacuated Unit #202 because of the AOAO's actions, there is nothing about HRS § 514A-90 that suggests that it authorizes withholding fees as the way to address a unit owner's complaint. *See* HAW. REV. STAT. § 514A-90(d) (Supp. 2012).

The instant application of HRS § 514A-90 is not an "unjust result obviously inconsistent with the [statutory] purposes and policies[.]" *Leslie v. Bd. of Appeals of Cty. of Haw.*, 109 Hawaiʻi 384, 393, 126 P.3d 1071, 1080 (2006). Therefore, the Circuit Court correctly granted partial summary judgment as to the AOAO's counterclaim for unpaid fees.[10]

(8) It was not error for the Circuit Court to deny

---

[9] Plaintiffs-Appellants also claim that the jury was placed in the judge's role because Question No. 2 of the Special Verdict form asked the jury to find whether the AOAO's negligence, if any, was the "legal cause" of harm to Plaintiffs-Appellants. This, too, is without merit. The jury instructions plainly define "legal cause" in terms of whether an act or omission "was a substantial factor in bringing about" harm. *See Aga v. Hundahl*, 78 Hawaiʻi 230, 236-37, 891 P.2d 1022, 1028-29 (1995).

[10] Plaintiffs-Appellants also argue that the AOAO could have limited damages by exercising a right to terminate its sublease with Plaintiffs-Appellants but elected not to. Plaintiffs-Appellants raise this argument for the first time on appeal. Arguments raised for the first time on appeal are deemed waived. *See Price v. AIG Hawaiʻi Ins. Co.*, 107 Hawaiʻi 106, 111, 111 P.3d 1, 6 (2005).

Plaintiffs-Appellants' motion under HRCP Rule 12(f)[11] to strike the sixth defense in AOAO's answer to Plaintiffs-Appellants' Complaint, which alleged that there was "no privity of contract between [Plaintiffs-Appellants] and Defendants." In response to Plaintiffs-Appellants' HRCP Rule 12(e) motion for a more definite statement, the AOAO clarified that the defense asserted no privity of contract specifically between Certified Management and Plaintiffs-Appellants.

The clarification did not assert anything about privity of contract between the AOAO and Plaintiffs-Appellants. Moreover, at the hearing, Plaintiffs-Appellants conceded that the "evidentiary basis for [their] motion to strike [was] deficient[,]" insofar as it provided no evidence of any contract between themselves and the AOAO. Finally, the motion was denied without prejudice. In these circumstances, and in light of federal courts' reluctance to grant similar Federal Rule of Civil Procedure Rule 12(f) motions, *see, e.g., Ollier v. Sweetwater Union High Sch. Dist.*, 735 F. Supp. 2d 1222, 1223–24 (S.D. Cal. 2010), the Circuit Court did not abuse its discretion.

(9) The Circuit Court did not err in granting the AOAO's motion in limine no. 1, which sought to "preclude any argument that [the AOAO] was liable for water damage not caused by leaks in common elements[.]" Plaintiffs-Appellants' argument is predicated entirely on their argument that the Circuit Court improperly granted the AOAO's MPSJ re Mold. As we found no merit in Plaintiffs-Appellants' argument as to the MPSJ re Mold, we likewise find no merit to their argument here.

Plaintiffs-Appellants also challenge the Circuit Court's grant of the AOAO's motions in limine nos. 6 and 7. Motion in limine no. 6 sought to exclude the testimony of Dixon, a neighboring tenant. Plaintiffs-Appellants argued that Dixon's testimony would have "provided the jury with valuable insight regarding the difficulties of living in a mold infested environment" and "allowed [Plaintiffs-Appellants] to better prove

---

[11]    HRCP Rule 12(f) provides that "upon motion . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Haw. R. Civ. P. 12(f).

their damages and show the necessity of [vacating Unit #202]."
Motion in limine no. 7 sought to exclude evidence related to
Plaintiffs-Appellants' claims for loss of income.

Since the jury found that the AOAO was not negligent,
and therefore not liable to Plaintiffs-Appellants for damages,
any erroneous exclusion of evidence that was solely related to
damages could not have affected the jury's verdict. Even if the
Circuit Court erred in granting either motion in limine no. 6 or
7, such error was harmless. *See Kuroda v. Kuroda*, 87 Hawai'i
419, 428, 958 P.2d 541, 550 (App. 1998).

(10) The "[trial court] judge is an expert . . . and
knows as well as a legal expert what are reasonable attorney
fees, . . . and in fixing that amount the trial court may proceed
upon its own knowledge of the value of the solicitor's services."
*Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286,
306, 141 P.3d 459, 479 (2006) (quoting *In re Estate of Thz Fo
Farm*, 37 Haw. 447, 453 (1947)) (internal quotation marks
omitted). In applying his or her "personal knowledge of the
complexity of the litigation and the nature and quality of . . .
services rendered," a judge does not abuse his or her discretion
by awarding an amount supported by fully itemized time entries
and a sworn declaration attesting to the reasonableness and
necessity of fees. *Id.*

The facts of *Stanford Carr* are closely analogous to the
instant case. In *Stanford Carr*, the Circuit Court awarded nearly
$782,000 in attorneys' fees and costs at the conclusion of a
complex lawsuit presided over by a single judge. *See id.* at 290
n.1, 295, 141 P.3d at 463 n.1, 468. This amount was
substantiated by "more than 190 pages of invoices including fully
itemized time entries" accompanied by counsel's sworn declaration
that "the time spent was reasonable and necessary under the
circumstances." *Id.* at 306, 141 P.3d at 479. Likewise, the
AOAO's attorneys submitted roughly sixty pages of invoices with
detailed time entries to substantiate approximately $50,000 in
fees and costs, along with accompanying declarations of necessity
and reasonableness. As in *Stanford Carr*, the Circuit Court judge
had presided over the entire litigation and was personally aware

of its complexity and the services rendered by the AOAO's counsel. He was aware that counsel had over twenty-five years of experience. It was well within his expertise and discretion to conclude that "the sums being sought appear . . . to be reasonable in light of the duration and complexity of this case."

Additionally, case law suggests, and Plaintiffs-Appellants provide no authority otherwise, that $200 per hour is a reasonable rate. *See, e.g., DFS Group L.P. v. Paiea Props.*, 110 Hawai'i 217, 223, 131 P.3d 500, 506 (2006) (taking the average of the rates of four attorneys in a contract dispute case, the court concluded that $215 was a reasonable hourly rate).

The fact that a limited number of the invoice time entries may have constituted block billing does not necessarily negate their substantiative value. *Compare Haw. Ventures, LLC v. Otaka, Inc.*, 116 Hawai'i 465, 478, 173 P.3d 1122, 1135 (2007), *with In re Application of Wai'ola O Moloka'i, Inc.*, 127 Hawai'i 404, 410-11, 279 P.3d 69, 75-76 (App. 2012). In contrast to *Hawaii Ventures*, Plaintiffs-Appellants do not argue that there are non-compensable activities entwined and indistinguishable from compensable ones. Rather, they argue that the instances of block billing make it "impossible to determine whether the time spent on each sub-task was reasonable or necessary or excessive." However, after reviewing the invoicing, the limited instances of block billing do not impede a determination of reasonableness or necessity. As the Circuit Court assessed, "[t]he level of alleged block billing . . . is relatively nominal[, and t]he sum being sought is reasonable." In making this determination, the Circuit Court did not clearly exceed the bounds of reason or disregard principles of law. *See First Ins. Co. of Haw. v. Dayoan*, 124 Hawai'i 426, 432, 248 P.3d 358, 364 (App. 2010).

The amount of the fee awarded by the Circuit Court appears to equal the unreduced amount first requested by the AOAO, without any accompanying costs. Neither party has objected to the amount of the fee, however, and we deem the issue

waived.[12]/

Therefore, the Circuit Court's December 9, 2009 Final Judgment is affirmed.

DATED:   Honolulu, Hawai'i, May 10, 2013.

On the briefs:

Gary Victor Dubin,
Frederick J. Arensmeyer, and
Benjamin R. Brower
(Dubin Law Offices)
for Plaintiffs-Appellants
and Counterclaim Defendant

*Presiding Judge*

Jeffrey A. Griswold,
Steven Y. Otaguro, and
John D. Marshall
for Defendants/Cross-
Claimants/Cross-Claim
Defendants-Appellees and
Counterclaimant Executive
Center AOAO, Certified
Management, Inc., Dale Anzai,
Roy Ho, and Doug Mattos

*Associate Judge*

*Associate Judge*

Lisa A. Bail,
Carly Minner-Cole, and
Abigail M. Holden
(Goodsill Anderson Quinn &
Stifel, a Limited Liability Law
Partnership LLP)
for Defendants/Cross-Claim
Defendants-Appellees
Jason Princenthal and Aircare
Environmental Services, Inc.

---

[12]/    Plaintiffs-Appellants add a final argument that even if this court finds the fee award appropriate, it should "remand[] for redetermination [given] that [the AOAO] did not fulfill its duty to mitigate its damages[,]" referencing their argument regarding the sublease termination mitigation of damages.  *See supra* note 11.  However, they make no argument and cite no authority that the two issues should be linked; therefore, we deem this argument waived as well.  *See* Haw. R. App. P. 28(b)(7).